UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MESILLA OFFICE SOLUTIONS, LLC | § § § |
| v. | §   CIVIL NO. 4:20-CV-386-SDJ § |
| HGS HEALTHCARE, LLC, ET AL. | § § |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute concerning the lease of office equipment. Defendant HGS Healthcare, LLC ("HGS") provides call center operational services from a facility in El Paso, Texas. Plaintiff Mesilla Office Solutions, LLC ("Mesilla") agreed to lease to HGS certain equipment, described as "workstations," for use in HGS's El Paso facility. The parties signed a lease agreement with a term of one year, and HGS paid a monthly "service fee" of $30,000 for the use of the workstation equipment. The agreement further provided that, if HGS continued to use the equipment after the end of the one-year term, it would also continue to pay the same monthly service fee until either a new rate for the service fee was agreed to by the parties or HGS "terminate[d] use" of the equipment.

Alleging, among other things, that HGS failed to pay certain amounts due under the parties' agreement, Mesilla has filed suit against HGS asserting claims for breach of contract, breach of a sworn account, and conversion.[1] Pending before the Court is HGS's motion for partial summary judgment, (Dkt. #42), in which HGS

---

[1] Mesilla also sued B N Narasimha Murthy, an individual doing business as HGS in Texas. The Court will collectively refer to HGS and Murthy as "HGS."

contends that under the plain language of the lease agreement, Mesilla is not entitled to any breach-of-contract damages for equipment rental fees that allegedly accrued after April 17, 2020. (Dkt. #42). It is undisputed that, on that date, HGS confirmed to Mesilla that the leased workstations had been "dismantled," i.e., they were no longer being used by HGS, and were being held on Mesilla's behalf for pickup.

Because the unambiguous language of the parties' agreement provides that HGS would not owe a monthly equipment rental fee once it terminated use of the leased equipment, and there is no dispute that HGS had ceased using the leased equipment by no later than April 17, 2020, HGS's summary-judgment motion will be **GRANTED**.

## I. BACKGROUND

Mesilla and HGS entered into a lease agreement dated November 7, 2018, (the "Lease"), in which Mesilla agreed to lease certain workstations and equipment to HGS for its use. (Dkt. #42 ¶¶ 2–4). Pursuant to the Lease, HGS was obligated to pay to Mesilla a rental fee, described as a "Service Fee," of $30,000 per month, for a term of "one year, from April 1, 2018 to March 31, 2019," (the "Lease Term"). (Dkt. #42-3 at 2). The Lease further provided that "if HGS utilizes the equipment after the end of the Term, HGS shall pay Mesilla on a month-to-month basis the Service Fee until a new rate is agreed upon or HGS terminates use of the workstations." (Dkt. #42-3 at 2). Mesilla alleges that from approximately April 2019 through March 2020, HGS failed to pay its invoices, which resulted in $360,000 outstanding and due to Mesilla under the Lease. (Dkt. #7-1 ¶6).

On April 17, 2020, HGS provided notice to Mesilla that the leased equipment was disassembled and ready for immediate pickup by Mesilla. (Dkt. #54-14). The record before the Court shows that, since that time, the parties have been unable to successfully coordinate the return of the leased equipment to Mesilla. There is substantial disagreement between Mesilla and HGS as to the reasons and responsibility for the failure to return the leased equipment to Mesilla, but there is no dispute that the equipment was dismantled and in storage, waiting to be returned, by April 17, 2020.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.*

3

at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248).

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. DISCUSSION

Mesilla contends that, in addition to the $360,000 in damages owed by HGS for invoices on the leased equipment between approximately April 2019 through March 2020, Mesilla is also owed an additional $30,000 in damages for every month after March 2020 until HGS returns the leased equipment. In its summary-judgment motion, HGS argues that, under the plain language of the Lease, it cannot owe any breach-of-contract damages after April 17, 2020, because HGS had terminated use of the leased equipment. Mesilla maintains that summary-judgment should be denied because the leased equipment was not actually available for pick-up, in its entirety, on April 17, 2020.

### A. Under Texas Law, Unambiguous Contract Language Is Enforced as Written.

In diversity cases, federal courts apply state substantive law and federal procedural rules. *Weatherly v. Pershing, LLC*, 945 F.3d 915, 925 (5th Cir. 2019). Here, the parties' lease agreement provides that it is governed by Texas law. In applying Texas law, the Court is guided by the Texas Supreme Court's decisions. *Conn Credit I, L.P. v. TF LoanCo III, LLC*, 903 F.3d 493, 502 (5th Cir. 2018). The Texas Supreme Court has made clear that, when Texas courts interpret contracts, their "primary objective" is "to ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement." *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015). This bedrock interpretive principle effectuates Texas' "strong public policy in favor of preserving the freedom of contract," *Freedom Ins. Co v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653, 664 (Tex. 2008), which allows parties to "prescribe particular remedies or impose[] particular obligations" as they choose, *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648–49 (Tex. 2007).

Under Texas law, when a contract uses unambiguous language, courts will "construe it as a matter of law and enforce it as written." *In re Deepwater Horizon*, 470 S.W.3d at 464; *see also El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012) ("We have an obligation to construe a contract by the language contained in the document."). Thus, the language of a contract will be enforced according to its plain meaning, unless such a reading would defeat the intentions of the parties. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 930 (Tex. App.—Houston [1st Dist.] 1996, no writ).

### B. Enforcing the Lease as Written, Mesilla Cannot Recover Service Fees after April 17, 2020.

As relevant here, the Lease provides that, after the conclusion of the one-year Lease Term, "HGS shall pay Mesilla on a month-to-month basis the Service Fee until a new rate is agreed upon or *HGS terminates use of the workstations*." (Dkt. #42-3 at 2 (emphasis added)). This language is unambiguous. The plain meaning of the word "use" is "to do something with (an object, machine, person, method, etc.) in order to accomplish a task, do an activity, etc." *Use*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/use; *see also Use*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/220635?rskey=8nrkZv&result=1#eid (defining "use" as follows: "[t]he act of putting something to work, or employing or applying a thing, for any (esp. a beneficial or productive) purpose; the fact, state, or condition of being put to work, employed, or applied in this way"). The word "terminate" means "to bring to an end." *Terminate*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/terminate; *see also Terminate*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/199426?rskey=cLjK3B&result=2&isAdvanced=false#eid (same). Thus, the phrase "terminate use" in the Lease plainly describes the point in time when HGS stopped using the workstations for its call center operation. Once that happened, HGS was no longer obligated to pay service fees for the equipment.

Mesilla argues that "use" in the Lease "must mean 'the right to use or possession of the equipment'" because the Lease would otherwise be unreasonable and "absurd." (Dkt. #58 at 1, 3). Not so. The unequivocal language chosen by the

6

parties requires that service fees would no longer be owed by HGS once it ceased to put the equipment to use. Mesilla attempts a post hoc rewrite of the Lease terms to expand that language to include a "right to use or possession" of the equipment. But the lease does not include such terms, and it is well established under Texas law that courts may not rewrite the parties' contract or add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *see also Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.–Amarillo 2000, no pet.) ("we cannot change the contract merely because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it").

Equally unavailing is Mesilla's argument that failing to expand the plain language of the Lease as it suggests would lead to an "absurd" result. Application of the absurd-results doctrine under Texas contract law is only appropriate if "it were quite impossible that a rational person could have intended" the result. *Fairfield Indus., Inc. v. EP Energy E&P Co., L.P.*, 531 S.W.3d 234, 249 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Instead, "the absurdity safety valve" is reserved "for truly exceptional cases," and "[m]ere oddity does not equal absurdity." *Id.* at 248. There is nothing unreasonable, much less absurd, about the parties' decision to limit service fees to the period of time during which HGS was using the leased equipment. The parties reasonably could have concluded, for example, that expanding the service fees obligation to include periods of time when HGS had a "right" to use the equipment or "possession" of the equipment could be subject to varying interpretation or otherwise cause confusion.

7

Indeed, the wisdom of the parties' drafting of the service fees provision is amply demonstrated by their corollary disagreement concerning the fact that, to this day, they have remained unable to effectuate the return of the leased equipment to Mesilla. If Mesilla refused or otherwise failed to pick up the leased equipment for months after being advised by HGS that the equipment was dismantled and ready to be collected by Mesilla, should HGS pay service fees for those months because it, albeit unwillingly, could be construed to "possess" the equipment during that time? The service fees term of the Lease forecloses any such creative argument because it plainly provides that such fees are owed only while HGS actually employed the leased equipment, and there is no dispute that HGS had ceased doing so no later than April 17, 2020.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendants' Motion for Partial Summary Judgment, (Dkt. #42), is hereby **GRANTED**. It is further **ORDERED** that Plaintiff Mesilla Office Solutions, LLC, is not entitled to any damages on its breach-of-contract claim for service fees allegedly owed under the Lease after April 17, 2020.

**So ORDERED and SIGNED this 14th day of February, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE