UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MESILLA OFFICE SOLUTIONS, LLC | § § § |
| v. | §   CIVIL NO. 4:20-CV-386-SDJ |
| HGS HEALTHCARE, LLC, ET AL. | § § § |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute concerning the lease of office equipment. Defendant HGS Healthcare, LLC ("HGS") provides call center operational services from a facility in El Paso, Texas. Plaintiff Mesilla Office Solutions, LLC ("Mesilla") agreed to lease to HGS certain equipment, described as "workstations," for use in HGS's El Paso facility. Alleging, among other things, that HGS failed to pay certain amounts due under the parties' lease agreement, Mesilla has filed suit against HGS asserting claims for breach of contract, breach of a sworn account, and conversion.[1] In response, HGS has asserted counterclaims for knowing participation in breach of fiduciary duty, conspiracy to cause breach of fiduciary duty, unjust enrichment, and declaratory judgment related to the lease transaction and the actions of Mesilla's manager, Ali Ganjaei.

By prior order, the Court granted Defendants' Motion for Partial Summary Judgment, holding that Mesilla is not entitled to any damages on its breach-of-contract claim for service fees allegedly owed under the parties' lease agreement after

---

[1] Mesilla also sued B N Narasimha Murthy, an individual doing business as HGS in Texas.

1

April 17, 2020. (Dkt. #77). Now pending before the Court is Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims[2], (Dkt. #43), in which Mesilla argues that summary judgment should be granted on all of HGS's counterclaims because, among other reasons, HGS has not presented any evidence of a breach of fiduciary duty as to HGS that Mesilla could have participated in and HGS has not presented any evidence of an unlawful act that could form the basis of a conspiracy. Further, Mesilla argues that HGS has no evidence of Mesilla performing any unconscionable or wrongful act by which Mesilla was unjustly enriched. Finally, Mesilla contends that summary judgment should be granted on HGS's declaratory judgment action because it is wholly duplicative of the contract dispute and HGS's affirmative defenses.

Because HGS has failed to present evidence of a breach of fiduciary duty by Ganjaei, summary judgment will be **GRANTED** as to the knowing participation in breach of fiduciary duty and conspiracy to commit breach of fiduciary duty claims. However, the Court concludes that there is a genuine dispute of material fact regarding HGS's unjust enrichment claim such that summary judgment will be **DENIED** as to that claim. Finally, consistent with HGS's briefing, the Court will **GRANT** summary judgment as to the declaratory judgment action because it already granted Defendants' motion for partial summary judgment.

---

[2] For clarification, despite the title of Mesilla's motion, only HGS filed counterclaims against Mesilla. (Dkt. #28 at 7).

2

## I. BACKGROUND

HGS is an Illinois limited liability company that is a wholly owned subsidiary of HGS USA LLC, which in turn is a wholly owned subsidiary of Hinduja Global Systems, Inc. ("HGSI"). (Dkt. #28 at 7). Mesilla is a Texas limited liability company, and Ali Ganjaei, a non-party to this case, has served as the manager of Mesilla from its inception through the present. (Dkt. #41 at 2); (Dkt. #55 at 9:8–18). Ganjaei also served as the CEO of HBI Group, Inc. ("HBI") from at least 2016 through present, and through HBI, Ganjaei provided legal services to HGS at certain times through 2020, although it is unclear from the record when Ganjaei first provided legal services to HGS or the extent of the attorney-client relationship. (Dkt. #54-6 at 37:14–38:12); (Dkt. #55 at 36:23–37:11; 92:21–25).

From January 2014 to December 2017, Mesilla subleased office space from HGSI and its subsidiaries. (Dkt. #28 at 8). Mesilla did not pay in full the amount it owed for the sublease. (Dkt. #54-9); (Dkt. #55 at 74:11-20). As a result, in early 2018 Mesilla owed HGS USA, LLC $264,040.00. (Dkt. #54-9); (Dkt. #55 at 74:11–20).

Mesilla and HGS entered into a lease agreement dated November 7, 2018, (the "Lease"), in which Mesilla agreed to lease certain workstations and equipment to HGS for its use. (Dkt. #42 ¶¶ 2–4). Prior to execution of the Lease, such equipment was appraised at $113,350.00 by RSM, an audit and accounting firm hired by HGS. (Dkt. #55 at 80:3–81:23); (Dkt. #54 at 16). The transaction ultimately embodied in the Lease was put up for board approval by HGSI on July 30, 2018. (Dkt. #41 ¶ 9). Ganjaei, a member of HGSI's board of directors, did not participate in the discussion of the transaction or vote on whether to approve such transaction because he was an

interested party by virtue of his position with Mesilla. (Dkt. #44-2 at 6); (Dkt. #55 at 86:5–21).

Pursuant to the Lease, HGS was obligated to pay to Mesilla a "Service Fee" of $30,000 per month, for a term of "one year, from April 1, 2018 to March 31, 2019," (the "Lease Term"). (Dkt. #42-3 at 2). The Lease further provided that "if HGS utilizes the equipment after the end of the Term, HGS shall pay Mesilla on a month-to-month basis the Service Fee until a new rate is agreed upon or HGS terminates use of the workstations." (Dkt. #42-3 at 2). Mesilla alleges that from approximately April 2019 through March 2020, HGS failed to pay its invoices, which resulted in $360,000.00 outstanding and due to Mesilla under the Lease. (Dkt. #7-1 ¶6).

On April 17, 2020, HGS provided notice to Mesilla that the leased equipment was disassembled for immediate pickup. (Dkt. #54-14). As far as the Court is aware, the parties have been unable to coordinate a time for the leased equipment to be picked up—although the parties disagree on who is to blame for this—so the leased equipment is still in the possession of HGS. (Dkt. #54-6 at 110:7–19).

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue

of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248).

"Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### III. DISCUSSION

**A. HGS's Claim for Knowing Participation in Breach of Fiduciary Duty**

HGS has asserted a claim against Mesilla for knowing participation in a breach of fiduciary duty owed by Ganjaei to HGS, both as a lawyer to HGS, and from June 2019 through October 26, 2019, as a manager of HGS. Mesilla argues that summary judgment is appropriate on this claim for various reasons, including that HGS does not have any evidence that Ganjaei breached any fiduciary duty to HGS. For the reasons stated below, the Court agrees.

As an initial matter, both parties agree that this claim is governed by Texas law. However, HGS argues that Illinois law governs any fiduciary duties Ganjaei owed to HGS because HGS was incorporated in Illinois. While Texas choice-of-law principles dictate that the "internal affairs" of an entity are determined by the law of the state of its incorporation, this principle only applies to fiduciary duties owed by a corporation's governing persons, officers, and owners. *See Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437, 449 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (holding that because "internal affairs" include "the rights, powers, and duties of [a corporation's] governing . . . persons, officers, and owners," the law of the state where the corporation was incorporated governed the question of whether an individual owed fiduciary duties as a result of serving as an officer or director). This rule is inapplicable to any alleged fiduciary duties owed by an outside attorney, and HGS does not point to any authority—and the Court is not aware of any—that holds to the contrary. Accordingly, the Court will apply Texas law to determine the scope of

6

Ganjaei's fiduciary duties as HGS's attorney[3] and Illinois law to determine the scope of Ganjaei's fiduciary duties as HGS's manager.

Under Texas law, the elements of a knowing-participation claim are: "(1) the existence of a fiduciary duty owed by a third party to the plaintiff; (2) the defendant knew of the fiduciary relationship; and (3) the defendant was aware of his participation in the third party's breach of its duty." *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied). Further, because knowing participation is a derivative claim, it "require[s] an underlying breach of fiduciary duty." *Id.*

HGS has specifically identified three ways in which Ganjaei allegedly breached its duty to HGS. First, "by allowing HGS to enter into an inflated contract with Mesilla that he knew was unfair to HGS—and by creating the situation that forced HGS into that contract in the first place." (Dkt. #54 at 16). Second, "by negotiating *against* HGS, while he was a lawyer *for* HGS, to materially worsen the terms of the Agreement for HGS and improve them for Mesilla." (Dkt. #54 at 18). And third, "by repeatedly demanding additional payments from HGS after the first year term was complete." (Dkt. #54 at 19). The first two alleged breaches only concern Ganjaei in his

---

[3] HGS also states, without support, that New York law should govern the fiduciary duties Ganjaei owes as an attorney because he was licensed to practice law in New York. However, because Texas choice-of-law rules apply to this case, Texas's most significant relationship test determines the applicable law to claims against attorneys. *See Streber v. Hunter*, 221 F.3d 701, 719 (5th Cir. 2000). HGS appears to concede that Texas has the most significant relationship with the relevant causes of action because it concedes that Texas law governs the knowing-participation, civil conspiracy, and unjust enrichment claims. Accordingly, the Court will apply Texas law.

role as an attorney, while the third concerns Ganjaei in his role as an attorney and a manager of HGS.

The first two alleged breaches of fiduciary duty are governed by Texas law because the fiduciary duty arises from Ganjaei's role as an outside attorney for HGS. Under Texas law, "[a]n attorney has a fiduciary duty to his client as a matter of law." *Floyd v. Hefner*, 556 F.Supp. 2d 617, 661 (S.D. Tex. 2008) (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). Such duty requires that an attorney "render a full and fair disclosure of facts material to the client's representation." *Willis*, 760 S.W.2d at 645; *see also Combs v. Gent*, 181 S.W.3d 378, 384 (Tex. App.—Dallas 2005, no pet.) (holding that attorneys "owe their client a fiduciary duty of most abundant good faith, requiring absolute perfect candor, openness, and honesty, and the absence of any concealment or deception" (quotation omitted)). An attorney breaches his fiduciary duty if he "benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends." *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.).

Regarding the first alleged breach of fiduciary duty—that Ganjaei should not have *allowed* HGS to enter into the Lease transaction or *created* the situation (the debt owed from Mesilla to HGS USA, LLC) that forced HGS into the Lease transaction—HGS has failed to provide any evidence demonstrating that Ganjaei was involved with or had any control over whether HGS entered into the Lease. Instead,

8

the record evidence concerning Ganjaei and HGS's attorney-client relationship is sparse. It demonstrates only that Ganjaei provided some type of "legal services" for HGS and that HBI was compensated for those services. (Dkt. #54-6 at 37:14–38:25); (Dkt. #55 at 36:23–37:11). There is no evidence regarding the extent of the legal services Ganjaei provided or the dates on which Ganjaei provided legal services, other than that such services began sometime before 2020. (Dkt. #54-6 at 37:14–38:25); (Dkt. #55 at 36:23–37:11). There is also no evidence that HBI was a law firm, but rather only deposition testimony from Murthy stating that HBI "provided services . . . especially legal, whenever it was required." (Dkt. #54-6 at 38:13–25).

Beyond this, HGS presents no evidence that Ganjaei advised HGS specifically on either the necessity or the appropriateness of the Lease or on the financial situation that preceded the Lease. Further, the Lease was approved by HGS's ultimate parent company—HGSI—and Ganjaei did not participate in HGSI's consideration of the Lease. Finally, there is no evidence that Ganjaei even had an attorney-client relationship with HGS during the time in question. In sum, there is no evidence showing that Ganjaei was HGS's lawyer with regard to the Lease, such that he had any power to not "allow" HGS to enter into the Lease, or that as a lawyer for HGS he created a situation that forced HGS to enter into the lease.

HGS also argues that Ganjaei breached his fiduciary duty to HGS by negotiating on behalf of Mesilla and against HGS. But there is no evidence to support this claim that Ganjaei provided to HGS legal advice that related in any way to the Lease transaction, or even that Ganjaei had an attorney-client relationship with HGS

9

at the relevant time. And, as it acknowledges, HGS is the party that had the leased equipment appraised and was fully aware of the appraisal value, such that it would have been able to compare the rental rate to the appraisal value. (Dkt. #54-11). There is simply no evidence supporting HGS's argument that it did not make a fully informed and independent decision when entering into the Lease, much less that Ganjaei had anything to do with that decision. Finally, HGS and HGSI were both aware of Ganjaei's role in the transaction: as stated above, Ganjaei recused himself from the discussion on the Lease transaction at the HGSI level, and HGS negotiated directly with Ganjaei as Mesilla's representative when determining the specific terms of the Lease. *See* (Dkt #54-13).

Further, to the extent HGS contends that the third alleged breach of fiduciary duty, demanding payment from HGS after the expiration of the Lease Term, was a breach of Ganjaei's fiduciary duty as HGS's attorney, the Court disagrees. Under the clear terms of the Lease, HGS's payment obligation could continue beyond the Lease Term if HGS continued to use the leased equipment. Thus, Ganjaei was not demanding anything beyond what was provided for under the Lease.

Because there is very little evidence regarding the timing of HGS and Ganjaei's attorney-client relationship and no evidence that Ganjaei (1) stood on both sides of the transaction, (2) failed to disclose conflicts of interest, or (3) made any misrepresentations, the Court concludes that there is no evidence supporting the allegation that Ganjaei breached a fiduciary to duty owed to HGS as HGS's attorney.

10

HGS also claims that Ganjaei breached the fiduciary duty he owed to HGS as a manager of HGS by demanding payments after the expiration of the Lease Term. As discussed herein, the fiduciary duties that arise from Ganjaei's role as a manager of HGS are governed by the law of the state of incorporation of HGS, which is Illinois. Under Illinois law, a manager owes a duty of loyalty and a duty of care. 805 ILL.COMP. STAT. ANN. 180/15-3(a); 180/15-3(g)(2). A manager's duty of care "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law." *Barus v. Siurek*, 2021 IL App (2d) 200209-U, 2021 WL 4740879, at *10 (Ill. App. Ct. Oct. 12, 2021) (quoting 805 ILL. COMP. STAT. ANN. 180/15-3(c)). A manager also must "discharge his duties consistent with the obligation of good faith and fair dealing." *Id.* (quoting 805 ILL. COMP. STAT. ANN. 180/15-3(d)).

As relevant here, Ganjaei's demand for payment after the expiration of the Lease Term was consistent with the terms of the Lease. The Court is aware of no authority, and HGS has presented none, holding that enforcing contractual rights could amount to gross negligence or be inconsistent with good faith and fair dealing. Significantly, Ganjaei was only a manager of HGS for a relatively short period of time, *after* the Lease had been entered into. Therefore, Ganjaei cannot be responsible, as a manager of HGS, for the Lease transaction itself. *See Gifford v. Gallano Farms, LLC*, Nos. 2-10-0055, 2-10-0355, 2011 WL 10109462, at *13 (Ill. App. Ct. May 18, 2011) (holding that defendants did not violate their fiduciary duties to an LLC by

standing on both sides of certain lease transactions when the defendants "were not involved in the lease transactions in their capacities as fiduciaries of the LLC").

Thus, HGS has also presented no evidence demonstrating that Ganjaei breached a fiduciary duty owed to HGS as a manager, and accordingly, summary judgment on the knowing participation claim in favor of Mesilla is appropriate.

### B. HGS's Claim for Conspiracy to Breach Fiduciary Duty

HGS also asserts a civil conspiracy claim against Mesilla, alleging that Mesilla conspired with Ganjaei to breach his fiduciary duties to HGS. Mesilla argues summary judgment is appropriate on this claim because, among other reasons, HGS has no evidence of an underlying breach of fiduciary duty. The Court agrees.

The elements of civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983). Further, civil conspiracy is a "derivative tort," such that "a defendant's liability for conspiracy depends on participation in some underlying tort . . . ." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex, 1996). Therefore, HGS must provide evidence of an underlying breach of fiduciary duty to avoid summary judgment on its civil conspiracy to commit breach of fiduciary duty claim.

For the same reasons articulated above, the Court concludes that there is no evidence of an underlying breach of fiduciary duty by Ganjaei as required for HGS's civil conspiracy claim. Accordingly, summary judgment in favor of Mesilla should be granted on this claim.

### C. HGS's Claim for Unjust Enrichment

HGS has also asserted a counterclaim seeking the costs of storing the leased equipment that has been at its facilities since April 17, 2020, when it provided notice to Mesilla that such equipment was ready for immediate pick up. Mesilla argues that there is no genuine issue of material fact on this claim because under Texas law, HGS must demonstrate that Mesilla "has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." (Dkt. #43 at 25 (quotation omitted)). HGS responds that Texas courts have recognized that an unjust enrichment claim can also be based upon the defendant's "passive receipt of a benefit that is unconscionable to retain." (Dkt. #54 at 24 (citation omitted)). HGS is correct.

In *Digital Drilling Data Systems, L.L.C. v. Petrolink Services, Inc.*, the Fifth Circuit acknowledged that although an "unjust enrichment claim requires showing that one party has obtained a benefit from another by fraud, duress, or the taking of an undue advantage," 965 F.3d 365, 379 (5th Cir. 2020) (quotation omitted), "some Texas courts have stated that recovery under unjust enrichment is an equitable right and is *not dependent on the existence of a wrong* and unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit *or has passively received one* which it would be unconscionable to retain." *Id.* at 380 (cleaned up). The Fifth Circuit ultimately only addressed the unjust enrichment claim that was based upon a "wrong" because that was the type of claim pleaded in that case. *Id.* ("But whatever species of unjust enrichment claims might theoretically be available in

13

Texas, the proper object of our extra element test is the unjust enrichment claim *actually alleged*.").

The Texas Supreme Court has not yet specifically addressed whether an unjust enrichment claim may exist with just the passive receipt of a benefit. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (stating that a person may recover under the theory of unjust enrichment "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."). However, since *Heldenfels*, several Texas intermediate appellate courts have acknowledged a theory of recovery based upon passive receipt of a benefit. *See, e.g.*, *RDG Ltd. P'ship v. Gexa Corp.*, No.14-04-00679-CV, 2005 WL 949171, at *3 (Tex. App.—Houston [14th Dist.] Apr. 26, 2005, no pet.) (mem. op.); *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied).

For example, in *RDG Ltd. Partnership*, the court stated that a party can recover under a theory of unjust enrichment if it shows that "the party sought to be charged had wrongfully secured a benefit *or had passively received one* which would be unconscionable for that party to retain." 2005 WL 949171, at *3 (emphasis added). The court went on to explain that both theories of unjust enrichment "are fully compatible, and any determination on unjust enrichment will necessarily depend upon the evidence presented in the case." *Id.* at *4; *see also Villarreal*, 136 S.W.3d at 270 (holding that the plaintiff failed to establish that the defendants "wrongfully secure[d] a benefit" or that "they passively receive[d] one which would be unconscionable to retain"). Looking to Texas appellate courts as an indicator of how

14

the Texas Supreme Court would decide this issue, the Court concludes that HGS may establish an unjust enrichment claim by showing either that Mesilla engaged in wrongful conduct or that Mesilla passively received a benefit that would be unconscionable for it to retain.

Given the record before the Court, there is a genuine dispute of material fact as to whether Mesilla passively received a benefit that would be unconscionable for it to retain. HGS has presented evidence demonstrating that it has attempted to coordinate the pick-up of the equipment with Mesilla, that it is difficult for HGS to store all of the equipment, that such storage is costing HGS money, that Mesilla is not having to store or pay to store the equipment, and that Mesilla has only showed up one time to pick up the equipment, and this visit was unannounced. (Dkt. #54-6 at 106:15–20; 110:7–13). Considering the evidence in the light most favorable to HGS, the Court concludes that summary judgment is not appropriate on this claim.

### D. HGS's Claim for Declaratory Judgment

In its response to Mesilla's summary-judgment motion HGS stipulated that, if the Court granted HGS's motion for partial summary judgment, HGS's declaratory judgment counterclaim would no longer be necessary and should be dismissed. (Dkt. #54 at 25). Based on HGS's stipulation and the Court's order granting HGS's motion for partial summary judgment, (Dkt. #77), the Court will grant summary judgment on HGS's declaratory-judgment claim.

## IV. Conclusion

The Court **ORDERS** that Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims, (Dkt. #43), is hereby **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** as to HGS's counterclaims for knowing participation in breach of fiduciary duty, civil conspiracy to commit breach of fiduciary duty, and declaratory judgment. Summary judgment is **DENIED** as to HGS's counterclaim for unjust enrichment. It is further **ORDERED** that HGS's counterclaims for knowing participation in breach of fiduciary duty, civil conspiracy to commit breach of fiduciary duty, and declaratory judgment are **DISMISSED with prejudice**.

**So ORDERED and SIGNED this 21st day of February, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE